UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES HENRY TOWNSEND, II,

                                Petitioner,

v.                                              Case No. 17-12128

CARMEN PALMER,

                                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. Petitioner James Townsend was convicted after a jury trial in the Wayne Circuit Court of first-degree murder and sentenced to life imprisonment. Mich. Comp. Laws § 750.316. The petition raises three claims: (1) the trial court erroneously denied Petitioner's motion for substitute counsel, (2) the trial court erred in denying admission of a photograph depicting the victim with a firearm, and (3) Petitioner was denied the effective assistance of counsel when his attorney slept during trial. For the reasons stated below, the court will deny the petition for writ of habeas corpus and deny a certificate of appealability.

**I. BACKGROUND**

This court adopts the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

1

Defendants' convictions arise from the February 23, 2014, shooting death of Tairaz Harris, who was shot multiple times on a dark residential street in Detroit. There were no eyewitnesses to the shooting, but a resident heard the shots and then saw a sport utility vehicle (SUV) leave the scene. Harris and defendant Carter had been close friends and were at a casino together on the day Harris was shot. Carter lost all of his money, but Harris won $5,000. Carter was the last person seen with Harris. Harris's money and wallet were missing when the police checked his body.

Carter had borrowed a black SUV from his girlfriend, Taylor Williams. After the shooting, Carter and Townsend asked Williams to drive them to Saginaw, where they dropped off Townsend. Carter and Williams then drove from Saginaw to Williams's apartment in Ann Arbor, where they spent the night. The police arrested Carter the next morning. At the time of his arrest, Carter had more than $5,000 on his person. Carter gave a statement to the police in which he stated that Harris was shot during a "drug deal gone bad."

The prosecution's theory at trial was that Carter shot Harris, while aided and abetted by Townsend, either because Carter believed that Harris had something to do with the death of Carter's cousin, Reggie Moore, or to rob Harris of his money.

*People v. Townsend*, 2015 WL 8538908, at *1 (Mich. Ct. App. Dec. 10, 2015) (Dkt. #7-11).

Missing from the state court's summary of facts is a description of the evidence tying Petitioner to the crime. At trial it was established that Petitioner's co-defendant, Obie Carter, shot the victim. Petitioner was connected to Carter through cell phone records. Petitioner told police that he was at his mother's house at the time of the crime. Cell phone tower records, however, showed that he was in the area of the shooting at the time of the crime. Furthermore, texts between the two defendants—ones they thought they deleted from their cell phones—strongly indicated Petitioner's knowledge of and participation in the murder. (*See* Dkt. #7-7, PageID 1192) (Co-defendant: "Bro', I'm bout to body this nigga." Petitioner: "Who you wit? You want me to go wit you?" Co-

defendant: "Bro', listen, delete these texts. Everything when I'm done. I'm about to whack dog. I need you to be with me, Bro', RT.")

Following his conviction and sentence, Petitioner filed an appeal of right. His appellate counsel filed a brief on appeal that raised three claims:

I. Whether the trial court improperly denied a request made for substitute counsel prior to jury selection.

II. Whether the trial court erred in denying the admission of a photo depicting marijuana and the victim with a gun in his waistband.

III. Whether the trial judge erred in denying Townsend's motion for a new trial regarding his claim that trial counsel provided ineffective assistance by sleeping during trial.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. (Dkt. #7-11.) Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the court. *People v. Townsend*, 880 N.W.2d 552 (Mich. 2016) (Dkt. #7-12).

## II. STANDARD

28 U.S.C. § 2254(d)(1) restricts a federal court's review of constitutional claims raised by a state prisoner in a habeas action when the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). The Supreme Court of the United States had explained that "[a] state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our

cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016) (habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude.")

### III. DISCUSSION

### A. Substitute Counsel

Petitioner's first claim asserts that the trial court erroneously denied his motion for substitute counsel made immediately before jury selection. After reciting the applicable law with respect to late requests for substitute counsel, the Michigan Court of Appeals denied the claim on the merits as follows:

> Just before jury selection began in Townsend's case, the trial court stated that it had received a letter from Townsend the day before asking for more time to find another attorney. Contrary to what Townsend argues, the trial court allowed Townsend to explain his reasons for seeking new counsel. Townsend complained he and his mother were uncomfortable with

defense counsel because counsel did not pay attention during meetings, had not provided all of the discovery materials, and failed to address unspecified matters. Townsend admitted that he had met with his attorney at least four times. Townsend indicated that he had met a new attorney who was willing to take his case, but only if the trial court granted an adjournment to give the attorney time to prepare. The trial court denied the request for an adjournment because Townsend had waited until the start of trial to make the request and because Townsend failed to articulate a sufficient basis for his dissatisfaction with appointed counsel.

\*　　\*　　\*

The circumstances of this case are factually similar to those in [*People v. Akins*, 259 Mich. App. 545 (2003)], except that Townsend waited even longer before requesting an adjournment. The trial court accurately summarized Townsend's complaints as merely not "feeling comfortable" with his attorney. Townsend admitted that he had met with counsel at least four times. Townsend did not identify any fundamental disagreements or bona fide disputes with his attorney, or indicate how he believed his attorney was unprepared or unable to properly represent him at trial. Furthermore, Townsend's request was received a day before trial. An adjournment would have either required the court to also adjourn Carter's trial, or to sever the two cases. Under the circumstances and considering Townsend's failure to bring his concerns to the court's attention earlier and to identify a legitimate, bona fide dispute with his appointed attorney, the trial court did not abuse its discretion by denying Townsend's request for an adjournment to retain new counsel.

*Townsend*, 2015 WL 8538908 at \*5–7 (Dkt. #7-11).

This decision was not an unreasonable application of clearly established federal law. Under federal law, when a criminal defendant seeks substitution of counsel he "must show good cause, such as 'a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney.'" *Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v. Sullivan*, 431 F.3d 976, 979 (6th Cir. 2005)). A trial court's consideration of a motion for substitute counsel "requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). Once the defendant raises an issue of "serious dissatisfaction with counsel,"

the court must "inquire into the source and nature of his dissatisfaction." *United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017). If the defendant's motion would require a last-minute continuance, the trial judge's decision is "entitled to extraordinary deference." *Henness*, 644 F.3d at 321 (internal citation omitted).

Petitioner's motion for substitute counsel would have required a last-minute continuance, so the trial court's decision to deny the motion is entitled to extraordinary deference. Prior to the issue arising, defense counsel made a record of the efforts he made at negotiating a plea deal with the prosecutor that had spanned the three days immediately prior to trial. (Dkt. #7-4, PageID 397–98.) Petitioner was unwilling to accept the plea deal, and counsel indicated, "I was at the preliminary examination. You know that I filed a Motion to Quash. I have been fully engaged in this case for a long time. Yes, I have gone over it with a fine-tooth comb for three days, let's put it that way, preparing for trial Saturday, Sunday and then yesterday. So I am familiar with the whole case." (*Id.*, PageID 398.)

Counsel then informed the court that Petitioner was upset with him, and in particular he was upset with the fact that the potentially incriminating texts coming from his phone would probably be admitted at trial, driving his advice to Petitioner to accept a plea deal. (*Id.*, PageID 398–400.) The trial court allowed Petitioner to expound on his letter to the court which expressed dissatisfaction with defense counsel. (*Id.*, PageID 402–03.) Petitioner complained that he did not feel comfortable with counsel, that he slept through their meetings, and that counsel did not give him the discovery materials. (*Id.*, PageID 403–04.) Petitioner indicated that he had another attorney ready to try the case, but he needed an adjournment. (*Id.*, PageID 404–05.)

The trial court denied the request stating, "in light of the fact that this is the day of trial, the morning of trial, that the jury is literally in the hallway and has been sitting out there for sometime waiting for jury selection, given the late date and the issues that you're not comfortable with your attorney, I find that insufficient basis and I'm going to deny your request for a new attorney and an adjournment." (*Id.*, PageID 405–06.)

The untimeliness of the request weighs strongly against Petitioner because his request was made on the morning of trial. *See United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (request for substitute counsel made one and a half months before trial was untimely). Nor did the trial court give the request short-shrift. Rather, it allowed both Petitioner and defense counsel to expound on the reason for the request and to explore counsel's pretrial actions. The colloquy revealed that there had not been a complete breakdown in communication. It rather demonstrated a disagreement about the weight of the prosecutor's case and the extent to which a successful trial defense could be mounted. In other words, the record does not indicate a conflict that by itself was significant enough to require a substitution of counsel. *See, e.g.*, *Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003).

On this record, it was reasonable for the Michigan Court of Appeals to reject Petitioner's substitution of counsel claim.

## B. Exclusion of the Victim's Photograph

Petitioner's second claim asserts that the trial court erred in failing to allow the defense to present a photograph taken from social media that depicted the victim holding an automatic weapon tucked into his pants. The defense argued that the photograph supported the defense that the victim was shot during a drug deal or to

impeach the testimony of Marketa Smith and LaChonique Evans. After reciting the law regarding the admissibility of evidence under Michigan Rules of Evidence 401 and 402, the Michigan Court of Appeals found that the evidence was properly excluded:

> We agree with the trial court that the photograph was not relevant to their theory that Harris was shot during a drug deal. First, there was no evidence suggesting that Harris was armed at the time he was shot, or that he was shot in self-defense. Second, the photo was not probative of whether Harris was participating in a drug deal when he was shot. Whether Harris was known to carry a gun simply did not have a tendency to make it more probable that he met someone for a drug deal. While drug dealers are known to carry guns, it cannot be said that a person who carries a gun is likely to participate in a drug deal. Therefore, the trial court did not abuse its discretion by ruling that the photo was not relevant to support the defense theory that Harris was shot during a drug deal.

> We also disagree with defendants' argument that the photo was relevant to impeach the testimony of Marketa Smith. Although Smith was asked about Harris's involvement with drugs and denied that he was involved in selling or buying drugs, she was never asked if she had ever seen Harris with a gun. Smith's testimony that Harris was "[c]lean as a whistle" was made in response to questions involving Harris's involvement with drugs. Harris's sister, LaChonique Evans, similarly was not asked if she had ever seen Harris with a gun; instead, she too was only asked about his possible drug use or dealing. Because the witnesses never denied that Harris had a gun, the photo was not relevant as impeachment evidence.

> We find no merit to defendants' argument that the trial court made inconsistent rulings because it allowed the prosecutor to admit evidence from Townsend's Facebook page. The trial court's two evidentiary rulings were based on the substantive relevancy of the proffered evidence. The mere fact that the court admitted evidence from one social media website and excluded evidence obtained from another website does not reflect disparate rulings or treatment.

*Townsend*, 2015 WL 8538908 at *2–3 (Dkt. #7-11).

Petitioner first raised this argument as a state-law based evidentiary claim in the state courts. He asserted that the trial court abused its discretion in ruling that the evidence was inadmissible under the Michigan Rules of Evidence. (*See* Dkt. #7-11,

PageID 1356–58.) Petitioner made no argument to the state courts that the evidentiary ruling by the trial court violated his federal constitutional rights. Any argument that the exclusion of this evidence violated Petitioner's federal rights is therefore unexhausted and cannot form the basis for granting habeas relief. *Wagner*, 581 F.3d at 414–15 (to properly exhaust state remedies, a prisoner must fairly present the factual and legal basis for each of his claims to the state courts before raising the claims in federal court).

An unexhausted federal claim may nevertheless be denied on the merits. *See* 28 U.S.C. § 2254(b)(2). Generally speaking, errors in the admission or exclusion of evidence do not rise to the level of a due process violation. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)). However, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Id.* at 512 (internal citations omitted). State court evidentiary rulings do not violate due process "unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (internal citation omitted). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Ege v. Yukins*, 485 F.3d 364, 375 (6th. Cir. 2007) (quoting *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000)).

Here, the exclusion of the victim's photograph did not render Petitioner's trial fundamentally unfair. Its absence was not a crucial or highly significant factor. As explained by the state appellate court, the fact that the victim at one unknown point in time was photographed with a handgun tucked into his pants was not relevant to any

9

defense presented by Petitioner. Such a photograph did not indicate or suggest that the victim was a drug-dealer, it had no temporal connection to the crime, and it did not contradict any testimony presented by the prosecutor. Petitioner's defense at trial was not self-defense; it was that the prosecutor did not prove that he was at the scene or aided his co-defendant. Nor could the photograph have been used to impeach the testimony of Marketa Smith and LaChonique Evans. While these two witnesses testified that they did not know the victim to deal drugs, the fact that they may have known him to carry a gun at some unidentified time does not indicate any knowledge on their behalf that he was a drug dealer. As noted by the state appellate court, not every person who carries a gun is a drug dealer.

Petitioner's evidentiary claim as raised in the state courts is non-cognizable. Even if Petitioner had exhausted a federal due-process claim in relation to the photograph, the claim lacks merit.

### C. Effective Assistance of Counsel

Petitioner's final claim asserts that he was deprived of effective assistance of counsel when his trial attorney slept during his trial. This claim was raised in a motion for a new trial. The trial court denied it, rejecting the premise that defense counsel slept during trial. (Dkt. #7-10, PageID 1294.) The claim was renewed in the Michigan Court of Appeals. After reciting the correct constitutional standard for adjudicating the claim, the court rejected it on the merits as follows:

> Townsend argued in his motion for a new trial that he was denied the effective representation of counsel at trial because his appointed attorney slept through large portions of the trial. Although Townsend alleged that he had witnesses who were willing to support his claim, he failed to submit any affidavits from these individuals to support his allegations. Townsend

also invited the trial court to rely on its own recollection of counsel's representation at trial, but the trial court stated that it did not observe counsel sleeping during the trial. The court did recall that defense counsel suffered from a back problem during trial, which required that he take breaks to stretch his back. However, the court did not find that counsel's condition affected his performance at trial.

The record fails to disclose any instances where Townsend's trial counsel appeared to be inattentive to what was going on at trial. While Townsend claims to have witnesses who can support his position, he failed to submit any affidavits from these witnesses, and counsel's own summary of his conversations with the witnesses indicates that none were able to clearly tell that counsel was actually sleeping during trial. The trial court acknowledged that counsel had a back condition that it attempted to accommodate with appropriate breaks, but stated that it did not observe any instances in which counsel's representation of Townsend was affected by his condition. Townsend likewise fails to identify any specific manner in which his attorney's performance was deficient and prejudiced Townsend's right to a fair trial. Townsend alternatively requests this Court to remand this matter for an evidentiary hearing on this ineffective assistance of counsel claim. But because Townsend has not submitted any affidavits from witnesses who could provide information supporting Townsend's claim that counsel was observed sleeping during trial and has not explained how counsel performed deficiently, he has not established the factual predicate of his claim of ineffective assistance of counsel, *Hoag*, 460 Mich. at 6, or that remand for an evidentiary hearing is warranted.

*Townsend*, 2015 WL 8538908 at *7–8 (Dkt. #7-11).

Again, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Furthermore, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The trial court's finding of fact that counsel did not sleep through trial was supported by its own observations during trial:

This Court paid close attention to the testimony that was presented as well as the conduct and performance of the attorneys. At no time did this Court

see or observe either counsel, including Mr. Harris, sleep through any portion of trial nor was he unconscious.

I do recall during trial early on, Mr. Harris complained of back problems and he advised me either on or off the record, I don't recall which, that during trial he may have to on occasion have to have a break or to stretch his back because he had um either had–recently had surgery or had some difficulty with his spine; but as I mentioned, at no time did this Court observe any inadequate or substandard performance or at no time did the Court note that he was–he being Mr. Harris–at any time unconscious; and as counsel indicated, there are no supporting affidavits to support this contention by any witness including the defendant's mother.

(Dkt. #7-10, PageID 1294.)

Petitioner has not overcome by clear and convincing evidence the factual finding made by the trial court that counsel did not sleep during trial. The claim is therefore without merit.

## IV. CONCLUSION

Because none of Petitioner's claims merit relief, the petition for writ of habeas corpus will be denied. The court will deny a certificate of appealability because jurists of reason could not debate the court's analysis with respect to any of Petitioner's claims. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus (Dkt #1) is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

s/Robert H. Cleland              /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: October 24, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 24, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner                /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\17-12128.TOWNSEND.DenyHabeas.docx